UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RICHARD P. NIEDZWIECKI,

                                            Plaintiff                    DECISION AND ORDER

-vs-
                                                                        6:19-CV-0036 CJS

COMMISSIONER OF SOCIAL
SECURITY,

                                            Defendant.

_____

INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final

determination of the Commissioner of Social Security ("Commissioner" or "Defendant")

which denied the application of Richard Niedzwiecki for Social Security Disability

Insurance ("SSDI") benefits and Supplemental Security Income ("SSI") benefits.   The

Commissioner determined that Plaintiff's impairments prevented him from working, but that

he was ineligible for benefits pursuant to 42 U.S.C. § 423(d)(2)(c) since alcoholism and/or

drug addiction were contributing factors material to the disability finding.   Now before the

Court is Plaintiff's motion (ECF No. 11) for judgment on the pleadings and Defendant's

cross-motion (ECF No. 15) for the same relief.   For the reasons discussed below,

Plaintiff's application is denied, Defendant's application is granted, and this action is

dismissed.

STANDARDS OF LAW

The Commissioner decides applications for SSDI benefits using a five-step

sequential evaluation:

A five-step sequential analysis is used to evaluate disability claims. *See* 20

1

C.F.R. §§ 404.1520, 416.920.   First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a severe impairment which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in the regulations [or medically equals a listed impairment]. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity [("RFC")] to perform his past work.[1]  Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.   The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden at step five.

*Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (citations and internal quotation marks omitted)

An unsuccessful claimant may bring an action in federal district court to challenge the Commissioner's denial of the disability claim.   In such an action, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West).   In relevant part, Section 405(g) states that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive."

The issue to be determined by the court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an

---

[1] Residual functional capacity "is what the claimant can still do despite the limitations imposed by his impairment." *Bushey v. Berryhill*, 739 F. App'x 668, 670–71 (2d Cir. 2018) (citations omitted); *see also*, 1996 WL 374184, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see also, Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019) ("[We] will uphold the decision if it is supported by substantial evidence and the correct legal standards were applied.") (citing *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).").

"First, the [c]ourt reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *see also, Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) ("[W]here an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the [administrative law judge ("] ALJ["]). Failure to apply the correct legal standards is grounds for reversal.") (citation omitted).

If the Commissioner applied the correct legal standards, the court next "examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." *Tejada v. Apfel*, 167 F.3d at 773.   Substantial evidence is defined as "more than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted).

> The substantial evidence standard is a very deferential standard of review—
> even more so than the 'clearly erroneous' standard, and the Commissioner's
> findings of fact must be upheld unless a reasonable factfinder would have to
> conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443,
> 448 (2d Cir. 2012) (per curiam) (emphasis in original). "An ALJ is not
> required to discuss every piece of evidence submitted, and the failure to cite
> specific evidence does not indicate that such evidence was not considered.
> *Id.*

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal quotation marks omitted).

In applying this standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted).

42 U.S.C. § 423(d)(2)(c) states that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." *See also, Heaman v. Berryhill*, 765 F. App'x 498, 500 n. 2 (2d Cir. 2019) ("Claimants are not entitled to disability benefits if alcohol or drug abuse is a contributing factor to their disability.").   "Drug addiction is a material factor if the individual would not be found disabled if she stopped using drugs. 20 C.F.R. §§ 404.1535, 416.935. The claimant bears the burden of proving that her drug addiction is not a material factor. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123-25 (2d Cir. 2012)." *Smith v. Comm'r of Soc. Sec. Admin.*, 731 F. App'x 28, 30 (2d Cir. 2018).

## FACTUAL and PROCEDURAL BACKGROUND

The reader is presumed to be familiar with the facts and procedural history of this

action.    The Court will refer to the record only as necessary for purposes of this Decision

and Order.

On September 13, 2013, Plaintiff, who had previously been diagnosed with, *inter*

*alia*, depression, anxiety and opioid abuse, reported that he was compliant in taking his

mental health medications and that they "worked well for him," with no side effects.[2]    On

May 24, 2014, a doctor reported that Plaintiff's was "stable in terms of his mental health,"

and that his depression was well controlled with his current antidepressant medications,

though he needed detoxification from opiates.[3]    On May 31, 2014, a treating physician

reported: "[Patient] denies any significant mental health complaints, although he expressed

frustration with his ongoing struggle with substance abuse."[4]    On August 13, 2014,

Plaintiff reported having "significant depression recently due to his ongoing substance

abuse as well as the recent [drug-related] death of a close veteran friend."[5]    On March 17,

2015, a treatment provider noted that Plaintiff was complaining of cognitive problems, such

as mental fogginess and memory problems, though the provider opined that Plaintiff's

perception in that regard might have been a side-effect of taking high doses of

Neurontin/gabapentin.[6]

On May 6, 2015, Plaintiff was examined after he again claimed to have problems

with memory and cognitive functioning;[7]  however, the results of an extensive

psychological examination were largely benign, and the examiner indicated that Plaintiff's

---

[2]  Administrative Transcript at p. 322.
[3]  Administrative Transcript at p. 385.
[4]  Administrative Transcript at p. 1220.
[5]  Administrative Transcript at p. 1059.
[6]  Administrative Transcript at p. 334.
[7]  Plaintiff indicated that his cognitive concerns had started seven or eight years earlier following a surgery.
Administrative Transcript at p. 409.

perceived cognitive difficulties were probably due to fatigue and anxiety:

> Mr. Niedziecki's cognitive abilities were generally well within the normal range. . . .   Current day-to-day cognitive concerns are likely due, in part, to his significant fatigue as well as significant mood and anxiety symptoms. . . . The patient reported [a] history of a series of mild [traumatic brain injuries] TBIs that were generally spaced apart by a few years.   Based on self-reported details regarding head injuries, current cognition concerns are unlikely to be a direct result of the head injuries due to their remote nature and ample time between injuries.[8]

On July 7, 2015, Plaintiff reported that he had refrained from using alcohol for six months, but had then relapsed.[9]   On April 19, 2016, Plaintiff told a doctor that there were "several areas of his life" that had been negatively affected by his substance abuse, including his relationships with others, his employment and financial history, and his physical and mental health.[10]   Plaintiff further stated that he had last used heroin and cocaine two months earlier.[11]   The report from that same visit continued: "The [patient] reports no history of psychiatric illness, depression or anxiety.   Does have concern/anxiety about his memory and concentration.   [He had] cognitive testing done in 2015 with results in the normal range."[12]

On October 12, 2016, Plaintiff sought treatment for drug addiction, and a treatment provider reported that Plaintiff had a depressed mood and flat affect, but normal memory, cognition, speech, insight and judgment.[13]   On September 20, 2017, Plaintiff, who was again seeking treatment for opioid dependence, told a treatment provider that his mental

---

[8] Administrative Transcript at p. 411.
[9] Administrative Transcript at p. 394.
[10] Administrative Transcript at p. 1615.
[11] Administrative Transcript at p. 1616.
[12] Administrative Transcript at p. 1616.
[13] Administrative Transcript at p. 2543.

health symptoms were "currently well managed," though he was experiencing anxiety related to drug withdrawal.[14]   Plaintiff stated that he was "not planning returning to work," but was interested in pursuing additional education.[15]

On August 24, 2015, Plaintiff was examined by consultative psychologist Gregory Fabiano, Ph.D. ("Fabiano").[16]   Plaintiff reportedly told Fabiano that he had no learning difficulties, that he had been in regular education classes in school, and that he had completed two years of college.   Fabiano found that Plaintiff had no limitations in his ability to understand and follow simple directions or to perform simple tasks independently and make appropriate decisions; that he had mild to moderate limitations in maintaining a regular schedule, learning new tasks, and performing complex tasks independently; and that he had moderate limitations in maintaining attention and concentration and dealing with stress.   That same day, Samuel Balderman, M.D. ("Balderman") performed a consultative internal medicine examination.[17]   During that examination, Plaintiff reportedly told Balderman that he did not use alcohol, and that he had not used heroin during the preceding six months.[18]

On September 27, 2017, a treating physician at the Veteran's Administration, A. McGuerty, M.D. ("McGuerty"), completed a functional capacity assessment, indicating that based on his observation of Plaintiff during residential treatment between April 2017 and May 2017, Plaintiff had no impairment, disability or functional limitation.[19]

---

[14] Administrative Transcript at p. 1742-43, 1747.
[15] Administrative Transcript at p. 1768.
[16] Administrative Transcript at p. 1567.
[17] Administrative Transcript at p. 1573.
[18] Administrative Transcript at p. 1573.
[19] Administrative Transcript at pp. 2938-2943.

On October 6, 2017, a hearing was held before an ALJ.   At the start of the administrative hearing, the ALJ reviewed with Plaintiff and his attorney the law regarding alcohol addiction and drug addiction as it relates to disability claims.[20]   Plaintiff's counsel stated that Plaintiff's drug use was not "not material to his mental health condition because his condition existed before he started using drugs, and also now he's in treatment and he's still experiencing symptoms during the period of sobriety."[21]   This statement is significant since, as will be discussed further below, Plaintiff now claims that he had no such periods of sobriety.

During the hearing, Plaintiff testified that, for about a month, he had been living at a residential facility specializing in the treatment of mental health and substance abuse problems.[22]   Plaintiff testified that he had not used illegal drugs during that month, and that he had not consumed alcohol during the prior year.[23]   Plaintiff also stated that during the preceding year, there had been a period of about a year during which he had not used illegal drugs and had been taking "Vivitrol, which blocks the opiates."[24]   Plaintiff indicated, though, that he had mental problems, including memory loss and inability to focus, that pre-dated his abuse of opiates, and that those problems remained "the same" during periods of sobriety.[25]

---

[20]  Administrative Transcript at pp. 55-56
[21]  Administrative Transcript at p. 58.
[22]  Administrative Transcript at p. 60.
[23]  Administrative Transcript at pp. 62-63.
[24]  Administrative Transcript at pp. 69-70.
[25]  Administrative Transcript at p. 79.   Plaintiff testified that he had been in special education classes in school and that he had attended college only "for a little bit." Administrative Transcript at pp. 63, 79. However, during a psychological examination on May 6, 2015, Plaintiff stated he had never been identified as having any learning disabilities in school, and he told a different doctor that he had completed a two-year college degree in business. Id. at pp. 410, 1740.

On December 14, 2017, the Administrative Law Judge issued a very detailed 27-page Decision that deftly summarized a 2,957-page administrative transcript.   In pertinent part, the ALJ found that Plaintiff was "under a disability," but that "a substance abuse disorder [was] a contributing factor material to the determination of disability," and that Plaintiff was therefore not entitled to disability benefits.   That is, the ALJ found that if Plaintiff stopped using drugs, his remaining impairments, while serious, would prevent him from performing his past work, but would leave him with the residual functional capacity ("RFC") to perform certain jobs in the sedentary exertional category.

Plaintiff maintains that the ALJ erred in that regard, since he would still be disabled even if he stopped using drugs.   In particular, Plaintiff argues that the ALJ could not have parsed out his substance abuse from his mental impairments, since "there [was] no period of time in this case where Plaintiff was abstinent from drug abuse or alcoholism," and therefore no way for the ALJ to determine how Plaintiff might function if he were not using drugs.[26]

The Commissioner disputes Plaintiff's contentions and maintains that the ALJ's decision is free of legal error and supported by substantial evidence.

DISCUSSION

Plaintiff maintains that the ALJ's finding that he would not be disabled if he stopped using drugs was erroneous and speculative, since there was no evidence of how he would

---

[26] Pl. Memo of Law, ECF No. 11-1 at pp. 13-14 ("Here, there is no evidence of any period of sobriety.   The ALJ's RFC finding as to Plaintiff's functional capacity in the absence of [drug abuse or alcoholism] is entirely speculative. . . .   There was no evidence that Plaintiff's condition would improve in the absence of [drug abuse or alcoholism], because there is no evidence of Plaintiff's condition in the absence of [drug abuse and alcoholism].").

9

function when not using drugs.   However, that argument lacks merit, since as discussed above, the record indicates that there were various intervals during the relevant period when Plaintiff was not using drugs, contrary to what Plaintiff maintains.   Indeed, at the hearing, both Plaintiff and his attorney acknowledged that there had been such periods of sobriety.

Additionally, the record contains evidence of Plaintiff's functioning during those periods of sobriety.   For example, when Fabiano performed his consultative psychological examination on August 24, 2015, Plaintiff had indicated that he had not used drugs for approximately six months.[27]   Moreover, McGuerty based his functional report on his observations of Plaintiff during a month-long period when Plaintiff was in a residential drug treatment program and not using drugs.

Furthermore, the record indicates that Plaintiff's mental health symptoms were generally well-controlled during the relevant period, even when he was abusing drugs.   In that regard, the record details numerous instances in which Plaintiff requested opiate detoxification while indicating that his mental health problems were otherwise under control.

Consequently, the Court finds that the ALJ did not err, and that Plaintiff failed to carry his burden of demonstrating that he would be disabled even when not abusing drugs or alcohol. See, *Smith v. Comm'r of Soc. Sec. Admin.*, 731 F. App'x at 30 ("Here, Smith did not demonstrate that her substance abuse was not a material factor, and substantial evidence supported the ALJ's determination that it was. Smith's medical records showed

---

[27] Administrative Transcript at p. 1573.   As mentioned earlier, Plaintiff made that statement to Balderman, who performed his consultative medical examination the same day.

that her depression, anxiety, and bipolar disorder symptoms were well-managed through medications and that her functioning improved when she underwent substance abuse treatment. Additionally, Smith herself reported to her doctors that her substance abuse made her psychiatric conditions worse and that she experienced improvements when sober.").

## CONCLUSION

For the reasons discussed above, Plaintiff's motion for judgment on the pleadings (ECF No. 11) is denied, Defendant's cross-motion (ECF No. 15) for the same relief is granted, and this matter is dismissed.   The Clerk of the Court is directed to enter judgment for Defendant and close this action.

So Ordered.

Dated: Rochester, New York
          September 17, 2020

ENTER:


  /s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge